Case numbers 2339-23 and 2430-38. USA v. Kevin Clay. Ms. Zaharia, you may proceed for the appellant. Good morning and may it please the court. Amy Zaharia of Williams and Connolly for appellant Kevin Clay. I'd like to reserve three minutes. Thank you. The court should vacate Mr. Clay's conviction and remand for a new trial. And the alternative, the court should vacate the leadership enhancement on the restitution order and remand for resentencing. With respect to the conviction, I'd like to focus my argument today on the first point in our brief, which is the definition of willfully and the jury instructions. Under the Supreme Court's authoritative decision in Bryan, the word willfully in a criminal statute typically requires that the defendant knew his conduct was unlawful. The Bryan standard applies with full force to the health care fraud statute as six circuits have uniformly agreed. The instruction and the pattern instruction on which it was based plainly failed to convey this critical requirement to the jury. But it was the pattern jury instruction, wasn't it? It was the pattern jury instruction, Your Honor. And you've got to show plain error, don't you? Because you didn't, there was no objection to the instruction at the time it was given. We do, Your Honor, and we submit that the pattern instruction is plainly erroneous. There are three reasons why the court should hold the instruction to be plainly erroneous. First is the Supreme Court's decision in Bryan. In Bryan, the Supreme Court said that in the criminal context, the word willfully typically requires that a defendant knew his conduct was unlawful. So, I know you've got two more things to say, but while we're on that, if we read the jury instructions as a whole, they require that your client act, acted with an intent to defraud. So, I'm just wondering in this context, like I understand how like if we were playing poker or something and I cheated at cards, you might call that I had an intent to defraud and maybe I wouldn't think that was unlawful. But this is about, you know, submitting claims to insurance companies. Why doesn't acting with an intent to defraud convey the idea that the person who does that knows their conduct is unlawful? Because fraud is unlawful and everybody knows that. Sure. So, first of all, with respect to the statute itself, the two words have to have different meanings. Otherwise, willfully would be superfluous. Knowing and willful. Scheme to defraud and willful. As we point out in our reply brief, the mail-and-wire fraud statutes 1341 and 1343 require a scheme to defraud, which courts have interpreted to mean intent to defraud. But they don't require that that be willful. That word is in 1347, but not in 1341 and 1343, meaning it has to mean something more than just intent to defraud. And the government certainly understood those to be different things because in the very first two sentences of its rebuttal argument, it said, Mr. Clay didn't need to know it was a crime. He only needed to have intent to defraud. So the government expressly distinguished between those two things. Didn't the instructions also say that good faith would be a complete defense? It did, Your Honor. But that good faith instruction didn't say anything about whether Mr. Clay had to know he was violating the law. And to the contrary, it referred to his knowledge as to whether his statements were true, which is a different question as to whether he understood that the statements were violating the law. Now, if I can just go back to my two reasons why. Yes, one more second. Of course, Your Honor. So are you saying that the line between didn't need to know it was a crime and only needed to have intent to defraud is it could have been civilly? I mean, is your idea that you have to know your action is criminal, not just unlawful? I think that is one way. And is that in Bryan? Your Honor, that is one way to distinguish between the two. I think that Mr. Clay is claiming that pure omissions are actionable as fraud. That there could certainly be a situation where a defendant perhaps intends to deceive an insurance company by simply not saying something, but doesn't understand that that is actually a crime. Particularly where the thing that he didn't say, there's no duty to it. Ignorance of the law is usually not a defense. So maybe that's what you want to say Willful was doing. That is what Willfully is doing. Now the Supreme Court explained in Bryan that there are two different levels of Willfully that apply in the criminal context. There's knowledge that your conduct is generally unlawful and then there's knowledge that you're violating a particular statute that is often called the Cheek Standard. It comes from a tax case called Cheek. But what the health care fraud statute does in section 1347 B is to make clear that the Cheek Standard does not apply. 1347 B says that a defendant need not know of this particular statute or have an intent to violate this particular statute. And that is a very clear signal that Congress intended for the Bryan Standard to apply. Congress added that provision in 2010 to the health care fraud statute and it would have been quite odd for Congress to add a provision making clear that the higher Cheek Standard doesn't apply. What's your best case that supports your theory here? Well we cite to six circuit cases that have uniformly concluded that Bryan applies under the health care fraud statute. So the combination of Bryan itself, the text of the statute which makes clear that the higher Cheek Standard doesn't apply, in those six cases we submit constitutes plain error. And in our reply brief at page 6 we point the court to a large number of circuits that have held on plain error review that a uniform consensus among the court's sister circuits on an issue is enough to be plain error even if there's no specific on-point decision within the circuit itself. Now of course this is in the pattern instructions but we submit they're just wrong and the commentary to the pattern instructions are wrong. Most notably the pattern commentary does not even cite to Bryan or discuss the the typical meaning of willfully in a criminal statute. Don't the 3rd and 8th circuits, aren't they sort of where the 6th circuit is though? The 3rd and 8th circuits aren't in this chorus that you're talking about from the other circuits. The pattern instruction commentary points to pattern instructions from two other circuits as supporting the pattern but it doesn't cite to actual case law which of course case law is authoritative not the pattern. Did you look to the case law? Do the 3rd and 8th circuits, are the pattern instructions right about what the 3rd and 8th circuits say? Not in the 3rd circuit because the 3rd circuit is one of the circuits that we cite in our 6 circuits as the Schvitz case which applied Bryan to the health care fraud statute. I haven't seen a circuit, a case one or the other in the 8th circuit. We have 6 circuits, the government has no circuits that has adopted the pattern instruction in this case. Now on the issue of manifest injustice we acknowledge we're on invited error review. We acknowledge that is a difficult standard to meet but this instruction effectively reads willfulness out of the statute and that is constitutional error as we point out in our reply brief under the Supreme Court's decision in Netter. And as in any fraud case mens rea was critical to this case. I've already pointed to what the court, what the government said in rebuttal argument which just illustrates the prejudicial nature of this incorrect instruction. And I would also submit that the court's role in promulgating the pattern instructions is all the more reason to find there to be a manifest justice. In the Paul case that we cite from the 9th circuit, the 9th circuit had a pattern instruction on mens rea that was just plain wrong. It wasn't a situation where there was an intervening Supreme Court case, it was just a wrong instruction. And the 9th circuit held it to be plainly erroneous on plain error review and when it reached the final step of plain error review which is whether the error produced, impacted the integrity of judicial proceedings, the 9th circuit said, look, we're partly to blame because the court promulgates these pattern instructions and therefore the error impacts the integrity of judicial proceedings. We submit for the same reason the court should find manifest injustice. Are all jury instruction errors of constitutional dimension under your theory about Nieder? No, I think it would only be an instruction that misstates or in this case, you know, effectively eliminates an actual element of the offense, the Supreme Court and Nieder. Well, in Nieder it actually did, like, actually actually eliminate it. It eliminated the materiality element and here we submit it eliminated the willfully element if you accept that. By misconstruing it, but what, I mean, isn't that going to be every case? Like every jury instruction argument is going to be, well, this jury instruction didn't adequately convey this element of the offense. I think that is the implication of Nieder. I think that's why when jury instruction errors affect elements of the offense, the harmlessness standard is the Chapman standard, which is the standard that asks whether it is harmless beyond a reasonable doubt as opposed to just the lower kind of preponderance standard. So I do think that is the implication. I'm wondering if, I think we understand your point there, what about restitution? That sort of interests me. Yes, so let me turn to restitution. There are two errors with respect to restitution, both the amount and then the apportionment. With respect to the amount, the way that loss is calculated under both the guidelines for sentencing and at restitution is effectively the same when you're dealing with actual loss, and that is to look for the loss that was approximately and directly caused by the offense conduct. As we point out in our brief, many circuits have held at restitution and this court has held at sentencing that loss should not include the amount from medically necessary prescriptions in a health care fraud case because those losses were not directly and proximately caused by the loss. So is it your position that the co-defendants plea agreement cannot be considered in setting these 90%-10%? Yes, Your Honor, that is our position. The statute provides a lot of discretion to the judge in choosing between apportionment and joint and several liability, but once the judge makes that choice, it cabins the decision on how to apportion to only two factors, the relative contribution of the defendant to the loss and the financial resources of the defendant. I would like you to address issue three. I'm interested in the fact that the trial counsel really didn't explicitly argue about the enhancement. What is it that pushes this into the arena that the court was required to have sufficient factual findings on it? Sure, so we certainly did, counsel certainly did argue about the leadership enhancement in his sentencing memorandum. He expressly objected in that memorandum to the leadership enhancement and then the judge at sentencing raised the issue directly with the government saying, I've given the enhancement but should I have given it? Please give me your best case for why the enhancement applies. I think the combination of the objection in the sentencing memo and then the fact that the judge expressly raised the issue at sentencing certainly means that some sort of factual findings were required. Do you think federal rule of criminal procedure, I think it's 32, instructs that that's what has to occur in a controverted matter? What rule 32 requires is that there be a ruling and arguably I suppose the judge ruled by including the enhancement. But what this court has said in cases like Vandenberg is even though express factual findings are not required, they are preferred because when the judge fails to enter factual findings, this court has no way to review them and so the court's review needs to be de novo. And on de novo review, there's no basis for the enhancement here because the government cites only to Mr. Bacchus as the person whom Mr. Clay allegedly controlled but it cites to no evidence from which this court could conclude that Mr. Bacchus was a criminally responsible participant and that is the standard for the leadership enhancement. There needs to be control of someone who is criminally responsible and there's just no evidence that Mr. Bacchus had criminal intent. He denied that he knew he was doing anything wrong and the government just points to no evidence from which the court could make that finding. Thank you for your rebuttal time. Good morning, your honors. May it please the court, Rebecca Lutzko for the United States. I'm going to, unless your honors have questions about other issues, address the same three issues that were just discussed in the following order. Jury instructions, restitution, and then leadership enhancement. Would you mind beginning with the leadership enhancement? We just have a complete explanation of that. Absolutely. I would be interested in your argument as to why the leadership should apply here. Thank you, your honor. So I would point the court, one of the cases cited in the one of the briefs was the Darwich case, which it discusses the old rule of 32.1. Under 32.1, it used to say that courts must make a finding of fact. Rule 32.1 was then amended and it now reads that the courts must rule on the dispute. So I would note that there has been a change in the rules. Can you give me the date of the change? I apologize, I cannot, but I want to say it's around 2013, but I apologize, but it was definitely in advance. U.S. v. White from 2007 seemed to me to address this issue, that if it's sufficiently disputed, because it's disputed, you can't just adopt a PSR or just declare facts and assume them. You must make them. And doesn't that argument or that proposition of law remain? So, your honor, while I believe the proposition of law remains, I would point this court to its decision in the United States v. Fisher, which was 824F Appendix 347, specifically at 357, where it talks about this sort of issue. So in that case, the defendant did dispute the conclusion that the leadership enhancement applied, but did not dispute the facts. And I would submit that's exactly what happened here. If you read the sentencing memo that the defendant submitted, they're not disputing the underlying facts, or certainly not any one of any materiality. What they're focusing on is what those facts mean. And so in the Fisher case, what the court said was, when the defendant does not dispute the PSR's facts, but instead argues that the conclusions and inferences to be drawn from those facts do not support an enhancement, then that is not a dispute that the court needs to make findings on and can summarily, quote, I'm sorry, and quote, summarily adopt the factual findings in the PSR. But can't, that's the PSR, but that does not account for the district court piece, where the district court itself raised to the government the issue. And if I understand that Mr. Clay's attorney did not join the fracas, so to speak, there was discussion between the government and the court about that. So why wasn't that raising it as disputed facts sufficiently that the two actions taken by Mr. Clay are sufficient to require a finding of that? So I would submit that the courts began that discussion with saying that he has found that it applies. He first says we have found, referring to the PSR, and that I have found that the leadership enhancement applies. And then he turns to the government and asks, should it? So the court starts from the premise that he found that the leadership enhancement applied and then went on to ask a number of questions and then still applied the leadership enhancement. So I think you can take from that a finding. I admit that it would be- I'm struggling with that, counsel, because it sounds to me like he begins with saying, well, I've already thought about this. And then he turns to the person who should really be the person to address it, the government, and says, I want to talk about this with you. Why isn't that, in fact, the very thing that leads to the requirement that he have heard that side, he has read the PSR objection by Mr. Clay, and now he's got to figure out how the two relate to one another and make a finding of fact. So Your Honor, I would certainly acknowledge that the court could have been clearer and made appellate review clearer for this court. But nonetheless, I would submit that looking at the PSR, the specific facts, the fact that this court sat through this entire trial, the numerous facts that he agreed or that he found in favor of the PSR and overruled the defendant's objections, specifically in the initial factual paragraphs, I want to that those, and I'm sorry, and those facts all pertain to the various participants, and they pertain to the control, and they pertain to the underlying things that the PSR then cites as facts for the leadership enhancement. And I believe that it's the entire combination of things that shows that the court found that it applied. It was made apparent he understood what the issues were, that it needed to be five or more or otherwise extensive, and that somebody had to have control over at least a participant. Again, I agree that the court could have done a better job, but I would note, Your Honor, with respect to the explanation, that the defendant here is somewhat at fault in that the court at the end asked the boss a question and asked if there were any other objections, and the defendant did not object to the quality of the court's explanation or the lack of any sort of finding. And while I acknowledge that we did not argue that in our brief, I nonetheless point that out for the court's consideration. Thank you. What about restitution? Tell me why we should affirm the restitution order. Restitution, I will talk about it in two different pieces. So first with respect to the amount, the government maintained all along that the $7 million number was the appropriate number. And the case law from this court, specifically the Bertram case, the Bolas case, even the Montgomery case, all of those support a theory that the reasonable loss calculation, when the evidence shows that the effective business model was fraudulently to bill insurers, that the entire amount of billings should in fact control. And I do want to at this point point out for the court that my opponent on the other side, my friend on the other side applies or relies heavily on the Mahmood case. That Mahmood case, they rely on the 2018 Mahmood case. They do not cite the 2021 Mahmood case, which was returned to this court. And this court made further findings that basically undermine everything that they cite in the 2018 case. And they do not cite that case. So I will give you that citation. It is in our brief, but not discussed. It is 2021 Westlaw 2979-591, case numbers 19-1243, 1667, and 1669, decision on July 1st, 2018. And in that case, this court, after remand, where it rejected the loss based on an initial Medicare certification and saying that it sounded like there were some facts and it didn't seem like the court made the proper findings, then when it came back, affirmed using that same number based on the court's finding that this overarching fraud was the purpose of the organization and convincing evidence that there was consistent execution of this fraud. And then at that point, it became the defendant's burden to show any individual instances of legitimate. Didn't Clay do that here? Wasn't there a presentation of some proof regarding statistical proof or some information about the ones that were appropriate? So there was some information, but it was not that precise in any event. It was simply saying looking at the former, the billings that Jeep had previously for these types of drugs and then looking at the increase, what is the delta there? And that's what he argued. And at the sentencing hearing, Judge Zuhari acknowledged the validity of both theories and it seemed initially, and he acknowledged specifically that the government's theory was that the scheme was so pervasive that this entire scheme was so outrageous and so blatantly, obviously, fraudulent. And the fact that you're paying kickbacks to patients, that you completely circumvent the idea of medical necessity before you even get in the door here. But he acknowledged that theory and then he said, but I'm going to be cautious. I'm going to be conservative. And he's right to do that because when we're talking about sentencing, we're talking about a punitive measure. We're talking about whether you're going to take somebody's liberty. And the sentencing guidelines, I believe, instruct the court to be conservative, not overly aggressive on determining that number. And so the court, while acknowledging both said, I'm going to be conservative and I'm going to use that number. But it does not in any way mean that he needs to use the same number for restitution. But isn't that actually perhaps backwards? Because at sentencing, the judge is allowed to think about punishment, about being punitive. But at restitution, he's not. He's only allowed to think about compensation, about making people whole. So it seems to me like maybe he has more leeway at sentencing than at restitution. I agree with that exactly. And that's exactly my point. At the restitution stage, he is obligated to make that victim whole. And so making the victim whole is the $7 million. But they can't be made whole for losses they didn't sustain, right? So in other words, so medically necessary prescriptions, you were obligated to pay for. There is no showing that any of these prescriptions were medically necessary. And in fact, the testimony at trial showed several patients who went in, they got prescriptions for themselves, their wives, their kids, some of whom even didn't show to the doctor, same case. Many of them were not medically necessary, granted. Isn't the question whether they're all medically necessary? And didn't he make some sort of showing, as Judge Strach said, that not all of them were? The only showing that they made was that in the past, there had been a history of some employees at the Jeep facility obtaining prescriptions in a, you know, or similar type prescriptions. But they did not make any showing whatsoever that any of those were medically necessary, and certainly that any of those were tied to the prescriptions that were involved in this case. So the comparator is pre this fraudulent scheme? Correct. Well, if they were pre the fraudulent scheme, then what would the fraudulent scheme have to do with them if they were valid before and paid appropriately? Then the fraudulent scheme intervenes, but those people who were getting that service before continued to get it. Why wouldn't that information show that those were not part of the fraud? What I would say, Your Honor, is there really is just no information about those prescriptions before. There really is no... You mean, you say if there is a fraudulent scheme and we are looking at medical care prior to the existence of the fraudulent scheme, it's the duty of that defendant to go back and investigate those prescriptions and tell the government, oh yeah, they were right because they came before I got involved in the fraud. So actually, Your Honor... It's quite a burden. I think maybe I've gotten a little off course, and I want to make more clear what the government's number was based on. So the government's number was actually very conservative. That $7 million that they put in front of the court were prescriptions that were written by Dr. Huenfeld, who was part of the scheme, and filled by Central Rx. There may have been a handful of other pharmacy prescriptions there, but the vast majority, if not all, were the ones from Central Rx. So the prescriptions that we're talking about are not... There are other prescriptions that GE paid, but that's not what we're looking at at all. What we're looking at are the ones that are involved in this fraudulent scheme. Or the doctor, the doctor who was involved in the fraudulent scheme, even if that doctor had perhaps legitimately prescribed something earlier, it's the doctor that is the governing factor for the government? It certainly is. And I would note that the doctor was not... Her billings whatsoever, her practice was extremely limited prior to this. This scheme is when she started really bringing on patients, and it's the... I don't believe that her prior billings include prescribing for these types of compounds. I don't think there's a tie between the two. And what the government focused on was the doctor, the prescriptions from that doctor, filled by that pharmacy, paid by GE. Why should Clay be allocated 90%? So Your Honor, I would say two things on that. So first of all, I think the court does have wide discretion. I acknowledge that in the MVRA, it talks about whether you either apportion or you apply joint and several liability. And I would point this court to the Williams case. So I think that the court did have the discretion, but... And I would note, though, in the Williams case, we have a very similar situation where the court made errors and the government made errors with respect to initial defendant. And so there was a disparate apportionment between two essentially co-equal defendants. But what they said, what this court said, is that when you're looking at the equities between a disparate sentence between two defendants and making the victims whole versus some sort of equitable issue vis-a-vis the defendants, making the victim whole is what matters and what trumps. And that is the Williams case that's cited and discussed in our brief. And so I understand why you would make a face like that, why you would be concerned that two essentially co-equal defendants have such a different amount of restitution. But I would note that if you want to find that the apportionment was for some reason improper in this case, the remedy here is to send this back to the district court to impose 100 percent joint and several liability. And so... He says he'd have a contribution claim then. I'm sorry? Your opposing counsel says that her client would have a contribution claim then against the co-defendant. Is that not correct? I don't think that... I mean, that's normal joint and several. Well, that is normal joint and several. But the problem there is, is that the co-defendant sentence is final. It's not before this court. Right, but this would be a civil action between the two of them. Why can't he bring that claim? I mean, maybe he can't. I don't know. I do not believe that he can bring such a claim. And I would, again, point this court to the Williams decision where this court did exactly that and held one defendant responsible for a significantly larger amount of restitution than the co-defendant because, given the equities and the restitution... It seems odd to me. Are you sure? I know this isn't really raised, but this plea agreement, and I've never seen one like this, but maybe I just haven't been paying attention. But it seems odd to me that you can... I understand you can bargain for a particular sentence, a particular punishment, but here you're bargaining with one defendant. It's like you're bargaining with one defendant for the sentence of the other defendant without including the other. I mean, normally that's not how it works. Your client, the one who cooperates might get a lesser sentence, but it doesn't mean that the other defendant has to serve his own sentence plus the delta. Your Honor, I would acknowledge that this plea agreement was somewhat unique, and I was not the counsel who was involved. Does this happen? That we bargain about restitution? Not in my personal experience. Nonetheless, the court is... And the district court would have an obligation to apply the MVRA and apply it appropriately. But nonetheless, when you are looking back at the equities and what you have before you here, you only have before you Mr. Clay's sentence, and either a 90% or a 100% restitution amount that the latter is joint and several is the appropriate... Is what you essentially have to decide. Can I just ask one more question? Please. Why couldn't we send it back and the district court says, oh, I actually find... Forget the plea agreement. I find 50%. He was 50% at fault. That's what he pays. You're saying he can't do that because then nobody gets the... The victims don't get the... Correct. And because Mr. Mluchnik's plea agreement and his sentence is simply not open and subject to revisiting. So yes. And again, I would strongly encourage you to look at the Williams case because it addresses an almost identical situation. I think your red light has been on, but I started this backwards and I wondered if either of the other judges had questions on the first jury instruction issue that you want. And because... A quick summary. Thank you, Your Honor. I would just like to hit on that. And I think that Your Honor's identified the crux of this issue here. First of all, we are on invited error, and I don't believe that for five different reasons that they've shown invited error. I'm sorry, that they manifest injustice. It's verbatim recitation of the Sixth Circuit pattern instructions. Those pattern instructions mirror this court's formulation of the healthcare fraud elements. The good faith instruction and the intent to defraud instruction each independently cover Brian knowing... Brian willfulness. And further, the Nieder case shows that a lack of an element is subject to harmless error review. And further, that this scheme was so blatant and so obviously fraudulent that this court should really not bat an eyelash in not even reviewing the issue at all. But if they do, they should find that there was no error because of those other two instructions. And if you were to find error, it's certainly not a plain one. Thank you, Your Honors. I'm going to go backwards, if I may. So let me start with apportionment. The Williams case is not an apportionment case. It's about the amount of loss. In that case, the amount of loss was calculated wrong with respect to the co-defendant. And when the defendant before this court came before the court, the court said, well, no, for you, we have to calculate loss the right way. That's not the situation. I think all that can happen at this point is what Judge Larson indicated, which is the case should go back and the judge should be instructed to figure out what the right amount of apportionment is to Mr. Clay. And if the result of that is that the victims are not made 100% whole, that is simply a result of what the government did with Mr. Mluchnik's plea agreement and the court accepting that obviously improper plea agreement, which allocated 10% to Mr. Mluchnik. This is a penalty on Mr. Clay for exercising his constitutional right to go to trial. What happened here is not proper. The court should be required in Mr. Clay's case to apply the MVRA and it's too late to make him joint and several with Mr. Mluchnik because Mr. Mluchnik cannot be made joint and several with Mr. Clay because his judgment is now final. Was there evidence in the record that Mluchnik was the one who did the primary work of maintaining the fraudulent scheme? Yes, there absolutely was. Your Honor, Mr. Mluchnik, and I'll get you the citation. Mr. Mluchnik himself testified, this is at page ID 1280, that essentially the administrative and financial matters of the company were his. He is the one who communicated with the doctor. He is the one who communicated with the Jeep employees through his aunt, who is also a co-defendant, Ms. Peace. On the issue of the amount, the Mahmoud case, yes, on remand from the first Mahmoud decision, this court, sorry, the district court said that the defendant had not carried his burden to show the amount of medically necessary prescriptions. We accepted that burden in this case at sentencing. The court found that we had carried that burden and we did so using the Fiat-Chrysler data that Judge Scranch mentioned earlier. There's no reason for the Fiat restitution when it accepted that approach at sentencing. And then finally, on the leadership enhancement, whether or not there was a ruling, whether or not there were factual findings, this court still needs to decide whether the enhancement is supported by the record. And all that we have is the PSR. The PSR says, this is paragraph 31, that Mr. Clay recruited Bacchus and the scheme had over five participants and it identifies as the five participants, the pharmacy and the physician and presumably the other three co-defendants. But it doesn't, there's no finding in this PSR that Mr. Clay controlled a criminally responsible participant. And that is what is required. So even if the judge was allowed to simply just adopt the PSR, the PSR still does not support the enhancement and the court should vacate the enhancement. Thank you.